930 So.2d 107 (2006)
FQCPRQ, et al.
v.
BRANDON INVESTMENTS, L.L.C., MKDB, Inc., and Kerry Brandon.
No. 2005-CA-0793.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 2006.
*108 David S. Maldow, Stuart H. Smith, Smith Stag, L.L.C., Barry J. Cooper, Jr., Cooper Law Firm, L.L.C., New Orleans, Counsel for Plaintiff/Appellant.
Fred L. Herman, Thomas J. Barbera, Daniel W. Nodurft, Law Offices of Fred L. Herman, New Orleans, Counsel for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO Jr., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Two organizations of concerned French Quarter residents and business owners appeal the trial court's denial of their Motion for a Preliminary Injunction seeking to *109 enjoin Defendants/Appellees from operating a French Quarter property as a transient-rental/guest house in an area zoned for residential housing because the property allegedly lost its exception of nonconforming use.

STATEMENT OF THE CASE
The Louisiana Supreme Court has described a nonconforming use as:
[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated...
Redfearn v. Creppel, 455 So.2d 1356, 1358 (La.1984); See Craig v. City of New Orleans Board of Zoning Adjustments, XXXX-XXXX (La.App. 4 Cir. 5/4/05); 903 So.2d 530.
Black's Law Dictionary also defines nonconforming use as "[l]and use that is impermissible under current zoning restrictions but that is allowed because the use existed lawfully before the restrictions took effect." Black's Law Dictionary 1577 (Bryan A. Garner ed., 8th ed., Thomson West, 2004).
The Supreme Court has explained that the "permitted continuation of a nonconforming use is designed to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area." Redfearn at 1358-59.
The nonconforming use at issue is located at 517 Dumaine Street (517 Dumaine), which has been operating with a legal nonconforming use as a "transient rental" property in an area that is now zoned for historic residential use. The guest house has always operated under valid Occupational Licenses issued by the City of New Orleans ("the City"). Brandon Investments purchased the property in June of 2001, and in 2002 sought to perform renovations to the property, and it sought and received all of the necessary City approvals to perform the renovations and maintain their nonconforming use status.
Appellants, the Vieux Carre Property Owners, Residents and Associates, Inc., and the French Quarter Citizens for the Preservation of Residential Quality, Inc., are neighborhood groups dedicated to the preservation of the Vieux Carre. Over the last few years, Appellants observed construction occurring at 517 Dumaine. Citizens reviewed two public documents concerning the property and determined that the hotel had lost its nonconforming status due to the construction. Specifically, they alleged that a document sent to a City Building Inspector by Appellees' contractor showed that 517 Dumaine was not operating as a hotel during the construction period and therefore has lost its nonconforming status because it was continuously vacant for over six months. Appellants also contended that blueprints submitted to the City by Appellees showed that Appellees made structural alterations to the property which caused it to lose its nonconforming status. Appellants then filed suit seeking to enjoin Appellees from operating their hotel, and also filed a Motion for a Preliminary Injunction. The trial court denied the Motion for Preliminary Injunction.
The denial or dissolution of a Preliminary Injunction should not be overturned on appeal absent a clear abuse of the trial court's great discretion. Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, XXXX-XXXX, p. 3 (La.App. 4 Cir. 10/3/01); 798 So.2d 1167, 1171. See HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693 (La.App. 4 Cir. 4/23/97); 693 So.2d 835.
*110 Appellants assert two assignments of error. First, they argue that the trial court failed to address the law regarding nonconforming use, as it applies to the facts in this case. Second, they argue that the trial court failed to apply the correct standard of review regarding nonconforming use.

LAW AND ANALYSIS
Appellants claim that they presented evidence that there had been a six-month break in the nonconforming use of 517 Dumaine. The Comprehensive Zoning Ordinance of the City of New Orleans's article on nonconforming uses provides that:
No nonconforming building or portion thereof, or land used in whole or in part for nonconforming purposes, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. The intent of the owner or other person to use a building or land for nonconforming purposes shall not be determinative of whether such building or land was vacant.
Comprehensive Zoning Ordinance of the City of New Orleans, Article 13, Section 13.2.1 (emphasis added). Thus a nonconforming use must be continuous, and a break in the nonconforming activity of over six months will result in a loss of any nonconforming status. Dolsen v. City of New Orleans, 544 So.2d 1256, 1257 (La.App. 4 Cir. 5/25/89); Jones v. Cusimano, 524 So.2d 172, 173 (La.App. 4 Cir. 4/12/88).
At the hearing, Appellants presented a document sent to the City Building Inspector by defendant's contractor which allegedly proved that 517 Dumaine was not operating as a hotel during the construction period. They further alleged that the document showed that a number of reservations were cancelled due to the construction, and that the premises were not safe to accommodate guests due to the construction. Appellants acknowledge that two guests did stay at the hotel between February 2004 and July 2004, but they allege that those guests were personal contacts of the Appellees.
Upon examination of the document submitted to the City Building Inspector, we note that it was entitled "Additional Information as you requested concerning 517  Guest Stay thru Last Few Months (sic)." The words "additional information" imply to us that this document is not a conclusive record of all the guests that stayed in the hotel. Additionally, the document appears to represent that guests stayed at the hotel three times between March 7, 2004, and July 5, 2004.
Furthermore, Appellees submitted affidavits from several guests establishing that they had stayed in the hotel during the construction period and that there had never been a six month period of vacancy. Appellees also submitted affidavits from Kerry Brandon, the owner of Brandon Investments, Inc. and sole shareholder of MKDB, Inc. stating that the hotel was never vacant for a continuous six month period, and that during the renovations an office manager managed hotel operations, including receiving and confirming reservations, paying utility bills and other duties. The trial court's great discretion to deny or grant a motion for a preliminary injunction extends to findings based on purely documentary evidence. Virgil v. American Guarantee & Liab. Ins. Co., 507 So.2d 825 (La.1987) (Dennis, J. concurring). We cannot say that it was manifestly erroneous for the trial court to find that the affidavits submitted by Appellees had more evidentiary value than the "additional information" document submitted by the Appellants.
*111 Appellants also allege that Appellees made structural alterations to 517 Dumaine that have caused the property to lose its nonconforming status. The Comprehensive Zoning Ordinance provides:
No building or land shall hereafter be used, and no building or part thereof shall be erected, reconstructed, converted, moved or structurally altered unless in conformity with regulations as set forth in this Ordinance, except as hereinafter provided.
Comprehensive Zoning Ordinance of the City of New Orleans, Article 13, Section 13.1.1 (emphasis added).
Appellants point to the Architect's Plans for 517 Dumaine which were submitted to the City. The plans propose installing new doors and transoms to be placed in an existing masonry wall, pouring concrete walls into an area where brick is to be removed, and installing condensing units to the outside of the building. Appellants claim that these changes constitute "structural changes" under the Comprehensive Zoning Ordinance's definition.
Appellees submitted the affidavit of Dalton Hithe, Jr., the contractor who performed the work. Mr. Hithe testified that "the renovations were not `structural changes.'" Appellees also argue that Appellants improperly rely upon the proposed plans instead of the "as-built plans," which show that the skylights were ultimately not installed and other suggested changes were not made. Appellees urge that the Appellants failed to produce any testimony or evidence that structural changes were actually made to the property. We agree. Proposed plans for construction that has already been completed is not enough evidence to justify a Preliminary Injunction. Appellants may ultimately be successful at the trial on the merits; however, we find it was not manifest error for the trial court to find that the Appellants' failure to put on any evidence or testimony that actual structural changes occurred did not support a Preliminary Injunction.
Finally, Appellants also contend that the trial court did not use the proper level of scrutiny. In Redfearn v. Creppel, supra, the Supreme Court wrote:
The purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities... Because a nonconforming use is inconsistent with this objective, it should, consistently with the property rights of the individuals affected and substantial justice, be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity.
Redfearn at 1359 (emphasis added). Thus, a party claiming that a particular use has a nonconforming use exception is subject to a narrow review by the courts; however, courts should employ this scrutiny consistent with "the property rights of the individuals affected and substantial justice." We read "individuals affected" to include both the defendant and the plaintiff, and "substantial justice" to apply to all parties.
We also note that the Redfearn case was an appeal from a trial for a permanent injunction, not a preliminary injunction. This high standard of review must also be consistent with the principles governing preliminary injunctions.
 The hearing is held on short notice  An application for a Preliminary Injunction shall be assigned for hearing within ten days of service of the notice. La.Code Civ. P. art. 3602.
 It is only a temporary disposition of the action  a writ of Preliminary Injunction is essentially an interlocutory order issued in a summary proceeding incidental to the main demand *112 for permanent injunctive relief. Bank One, Nat'l Assoc. v. Velten, XXXX-XXXX, p. 5 (La.App. 4 Cir. 8/17/05); 917 So.2d 454, at 458.
 It is designed to preserve the status quo  It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy.[1]Bank One, supra.

 The trial court has great discretion to grant or deny a preliminary injunction  In reviewing whether the trial court erred in granting or denying a preliminary injunction, the appellate court must be mindful that a trial court has great discretion to grant or deny the relief requested. Sessions, Fishman & Nathan, L.L.P. v. Salas, XXXX-XXXX, p. 5 (La.App. 4 Cir. 5/25/05); 905 So.2d 373, 377.
 An appellate court reviewing the disposition of a motion for preliminary injunction looks for an abuse of that discretion  Because a preliminary injunction is an interlocutory procedural device, we will disturb the finding of the trial court only upon a showing of abuse of its great discretion. Sessions, Fishman & Nathan, L.L.P. v. Salas, XXXX-XXXX, p. 6 (La. App. 4 Cir. 5/25/05); 905 So.2d 373, 377; LHO New Orleans LM, L.P., v. MHI Leasco New Orleans, Inc., 02-0663, p. 3 (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, 1012 (citing A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, pp. 8-9 (La.App. 4 Cir. 9/9/98); 720 So.2d 703, 708).
The status quo in this case is allowing a nonconforming use to continue for a few more months before a trial on the merits is held. Appellees and their predecessors in right have operated 517 Dumaine as a hotel since before the enactment of the Comprehensive Zoning Act in 1982. Neither party is put in a worse position by denying the motion for a preliminary injunction. Everything is the same as before the motion was filed.
In light of one of the purposes of the preliminary injunction  preserving the status quo  and the great discretion a trial court has in granting or denying the motion, we believe that the trial court was not manifestly erroneous in denying the motion for preliminary injunction.
The trial court's decision is also consistent with Redfearn. Appellees addressed the doubts about the continuation of the nonconforming use through affidavits and other evidence, and the trial court made a decision that was consistent with the property rights of both parties, and was substantially just.
We recognize that the denial of a Preliminary Injunction does not conclude the proceedings, which may proceed to trial on the Permanent Injunction. However, the trial court's denial of the Motion for Preliminary Injunction was not manifestly erroneous.

CONCLUSION
Based on the foregoing reasons, the denial of Appellants' motion for preliminary injunction is affirmed.
AFFIRMED.
LOVE and CANNIZZARO, JJ., concur in the result.
NOTES
[1] This language on maintaining the status quo as a requisite for the grant of a preliminary injunction is not absolute. Clearly, if Party A began an illegal activity which was causing irreparable harm to Party B, Party B would not be denied a preliminary injunction merely because the status quo was now Party A causing Party B irreparable harm.