PAUL A. BONIN, Judge.
| [Douglas Joubert and Lillian Legardeur (hereinafter “the neighbors”[1]) devolutively appeal the dismissal with prejudice of their lawsuit against The Atrium in Metairie, Inc. (“the Atrium”) and South Jefferson Davis Parkway, LLC (“SJDP”). For the reasons which follow, we reverse and remand.

Background Facts and Proceedings

The neighbors are residents of the New Orleans neighborhood known as Mid-City. They reside on South Jefferson Davis Parkway in the same municipal zoning district in which the Atrium and SJDP each own residential rental property. It is undisputed that the shared area is zoned RD-3 under New Orleans’ Comprehensive Zoning Ordinance (“CZO”). The RD-3 designation restricts the use of a property to a maximum of two families.
Before Hurricane Katrina struck New Orleans on August 29, 2005, the use by *188 Atrium and SJDP of their properties did not conform to the RD-3 restrictions. The Atrium’s property housed seven family units along with commercial spaces, |2and the property of SJDP housed five families. The non-conforming uses of these properties before the storm were not violations of the CZO. On account of the storm’s devastation, the Atrium and SJDP, like others in the neighborhood, were delayed in restoring their properties. Their intention was to continue the use of their properties in the same non-conforming manner as before the storm. The neighbors believed that the Atrium and SJDP as well as others[2] had delayed too long in their restoration efforts, resulting in their loss of their legal non-conforming use status.
The neighbors instituted suit against the City of New Orleans through its Department of Safety and Permits. They sought a declaratory judgment that several properties in the zoning district, including those of the Atrium and SJDP, were no longer entitled to a legal non-conforming use; and they also sought a writ of mandamus directed to the city.[3]
By amending and supplementing their initial petition, the neighbors subsequently joined Michael Centineo, the director of the Department of Safety and Permits, and other property owners, including the Atrium and SJDP. The newly named parties were persons whose rights would be affected by a declaratory judgment. They directed their request for a writ of mandamus against Mr. Centineo as a public officer. The neighbors also sought injunctive relief against all the opposing parties. The injunctive relief sought included the city’s ^enforcement of its zoning ordinances, its revocation of permits previously issued, and the conformance of the properties to the RD-3 zoning restrictions.
The Atrium and SJDP each filed exceptions of no cause of action and no right of action. The Atrium also filed a motion to dismiss which was set for contradictory hearing on the same date as the exceptions. The trial court granted both parties’ peremptory exceptions of no cause of action, granted the exception of no right of action filed by SJDP, and granted the motion to dismiss filed by the Atrium.[4] The trial court dismissed the neighbors’ suit against the Atrium and SJDP with prejudice. La. C.C.P. art. 1673.

The Statute and the Ordinance

At the core of this case is the neighbors’ request that the court declare whether the properties of the Atrium and of SJDP are still entitled to their legal non-conforming use status despite the delay. The Louisiana Supreme Court in Redfearn v. Cropped 455 So.2d 1356, 1358 (La.1984), described a non-conforming use of property *189 as: “[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, ...” See FQCPRQ v. Brandon Investments, L.L.C., 05-0793, p. 2 (La App. 4 Cir. 3/29/06), 930 So.2d 107, 109; Craig v. City of New Orleans Board of Zoning Adjustments, 04-1709 (La.App. 4 Cir. 5/4/05), 903 So.2d 530. CZO Section 13.2.1 states:
No nonconforming building or portion thereof, or land used in whole or in part for nonconforming purposes, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the disti’ict in which such building or land is situated. The intent of the owner or other person to use a building or land for nonconforming purposes shall not be determinative of whether such building or land was vacant.
See Brandon Investments, L.L.C., 05-0793 at p. 2, 930 So.2d at 110.
“The burden of proving termination of nonconforming use status by abandonment or discontinuance is on the party urging termination of the status.” City of New Orleans v. Elms, 566 So.2d 626, 634 (La.1990).
CZO Section 13.3.2 provides for procedures to obtain a restoration permit:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of the issuance of the restoration permit unless extensions are approved by the Board of Zoning Adjustments.
After Hurricane Katrina, the Louisiana Legislature enacted La. R.S. 33:4882 A, which became effective on June 29, 2006, providing that:
Notwithstanding any provision of law or municipal or parish ordinance or resolution to the contrary, the governing authority of any municipality or parish or agency of any such municipality or parish shall not allow and shall not cause any building or land to lose its nonconforming use status because, during all or part of the period of August 29, 2005, through August 28, 2007, as a result of damage caused by Hurricane Katrina or Hurricane Rita, it is temporarily vacant or operations ^normally carried on in such building or on such land have been temporarily discontinued.

The Atrium’s Motion to Dismiss

We consider first the Atrium’s motion to dismiss. The Atrium attached to its motion a permit issued by the Board of Zoning Adjustments (“BZA”) which purported to grant a twelve-month extension to the Atrium to complete restoration by October 13, 2009, which extension, the Atrium argues, rendered the neighbors’ lawsuit moot under Cat’s Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186.
The neighbors argue that the motion was not served upon them in sufficient time to permit them to prepare a defense to it. The record shows that it was served on the neighbors’ counsel two days before the scheduled hearing, which is less than the ordinary 15-day requirement provided for in the local rules of court.[5] The *190 | ¿neighbors further argue that the issuance of the permit begs the very question of whether the extension itself came too late. The neighbors contend that the BZA could not revive an already expired non-conforming use. “The Board cannot by its own unauthorized acts, acquire authority it does not possess.” State ex rel. Phillips v. Board of Zoning Adjustments of City of New Orleans, 197 So.2d 916, 920 (La.App. 4th Cir.1967). The cross-claim filed by the Atrium against the city seems to support the neighbors’ argument.[6] Finally, the neighbors argue that the issuance of the permit by the BZA was not final and was the subject of an administrative appeal and judicial review.[7]
We agree with the neighbors that the pending administrative appeal from the issuance by the BZA of the permit precludes a finding by the trial court of mootness. Both La. R.S. 33:4727 E and CZO Section 14.11 provide for an appeal to the district court from a decision of the BZA. “The court may reverse or confirm, wholly or in part, or may modify the decision brought up for review.” La. R.S. 33:4727 E(5). The appellate proceedings and the standard of review by the court of the decision of the BZA are guided by La. R.S. 49:964 *191 (Louisiana Administrative Procedure Act). Curran v. Board of Zoning Adjustments Through Mason, 580 So.2d 417, 418 (La. App. 4th Cir.1991). See also Williams v. Board of Zoning Adjustments, 444 So.2d 669, 670, n. 3 (La.App. 4th Cir.1984). A decision by the district court is a judgment appealable of right to the court of appeal. La. C.C.P. arts. 2082 and 2083; La. R.S. 49:965. See also Dudenheffer v. City of New Orleans, Department of Safety and Permits, 482 So.2d 175, 176-77 (La.App. 4th Cir.1986). If, after judicial review, the permit is deemed valid and within the authority of the BZA, then it may well follow that the court will declare that the Atrium’s property enjoys continuing legally non-conforming use status. However, in the meantime, the mere issuance of the permit does not render the neighbors’ action for a declaratory judgment moot. Accordingly, the motion to dismiss should have been denied.

The Exception of No Cause of Action

Whether a petition states a cause of action is raised by the peremptory exception of no cause of action. La. C.C.P. art. 927(A)(5). “No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.” La. C.C.P. art. 931. The well-pleaded facts of the petition must be accepted as true. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 9 (La.3/2/99), 739 So.2d 748, 755. The petition shows that the neighbors live near the properties of the defendants owned by the Atrium and SJDP. Because of their proximity to these properties, if the properties do not enjoy legal non-conforming uses and become fully occupied, the | ^neighbors will unlawfully be subjected to diminution in them property values[8] and their quality of life due to the by-products of population density, such as parking congestion and noise volume. CZO Section 3.1.1 governs the creation of zoning districts which were established “[i]n order to regulate and restrict the location and use of buildings and land for ... residence, and other purposes [and] to regulate and restrict ... the density of population.... ” The RD-3 Two-Family Residential District permits, among other uses, single-family homes, two-family dwellings, and town houses. CZO Sections 4.6.1 and 4.6.3. The RM-2A Multiple-Family Residential District is distinguishable from the RD-3; it permits in addition to the RD-3 uses multiple-family dwellings and convents and monasteries. CZO Sections 4.10.1 and 4.10.3. Except for legally nonconforming uses, multi-family dwellings are not listed as permitted in a RD-3 zoning district; “uses not specifically listed are prohibited.” CZO Section 3.2.
In essence, the neighbors will be subjected to conditions which are not otherwise permitted in their RD-3 zoning area, the very conditions which the RD-3 classification is designed as a planning tool to prevent and minimize. See Jenkins v. St. Tammany Parish Police Jury, 98-2627, p. 5 (La.7/2/99), 736 So.2d 1287, 1290 (“Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities.”) “The Zoning Ordinance protects adjacent property owners and neighbors by requiring the property owner to carry the burden of meeting the statutory standards.” Curran, 580 So.2d at 419 (emphasis supplied). See also Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 386-87, 47 S.Ct. 114, 71 *192 L.Ed. 303 (1926).[9] On the one hand, if they are unlawfully subjected to these conditions, they will pursue corrective remedies, such as injunctive relief. On the other hand, if they are lawfully subjected to these conditions (because the properties do enjoy legally non-conforming uses), then they will have no remedy either in damages or in equity.
The issues presented in this matter are not simple. The neighbors, like neighbors in other neighborhoods, want the city’s zoning ordinances enforced.[10] They forcefully argue, and their petition sets out sufficient factual allegations, that the properties belonging to the Atrium and SJDP “forfeited” their legally non-conforming uses by the passage of time, including the extension mandated by La. R.S. 33:4882 A. See Brown v. City of New Orleans, 560 So.2d 983 (La.App. 4th Cir.1990). They insist upon a strict and literal reading of La. R.S. 33:4882 A.[11] “When a law is clear and free from all ambiguity, its letter shall not be disregarded under the pretext of following its spirit.” Nash v. Whitten, 326 So.2d 856, 862 (La.1976); see also La. C.C. art. 9.[12] As we stated in Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 73 (La.App. 4th Cir.1992):
| inBecause a non-conforming use is inconsistent with the objective of the zoning ordinance which is to confíne certain classes of buildings and uses to certain localities, it should be viewed narrowly and have all doubts resolved against continuation or expansion of the nonconformity in order to preserve the property rights of adjacent owners....
Moreover, the neighbors argue that any “extension” by the BZA is ineffective as being beyond “the limited authority granted to the Board by law.” See Lakeshore Property Owners Association v. City of New Orleans, Zoning Board of Appeal and Adjustments, 481 So.2d 162, 167 (La.App. 4th Cir.1986) and cases cited therein.
The Atrium and SJDP almost concede that their non-conforming uses were lost if only the letter of the law were to be applied. They point out, however, the general purpose behind permitting continuation of non-conforming use: “to avoid the hardship, injustice and doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area.” Redfearn, 455 So.2d at 1358- *193 59; Weisler v. Board of Zoning Adjustments, 98-3007, p. 7 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1264. Louisiana law, moreover, confers the following power, among others, upon the BZA:
In passing upon appeals, where there are practical difficulties or unnecessary-hardships in the ivay of carrying out the strict letter of the ordinance, to vary or modify the application of any of the regulations or provisions of the ordinance relating to use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.
La. R.S. 33:4727 C(3)(c), emphasis supplied; see Samuel v. City of New Orleans Board of Zoning Adjustments, 03-0604, pp. 7-8 (La.App. 4 Cir. 9/17/03), 857 So.2d 1075, 1079-80 (stating, “La. R.S. 33:4727(C)(3)(c), however, gives the Board Lithe authority to provide relief from the strict letter of Comprehensive Zoning Ordinance if relief will not violate the spirit of the ordinance.”) Of course, the test is “unusual hardship or difficulty;” financial reasons do not meet the test. Samuel, 03-0604 at p. 8, 857 So.2d at 1080. All of these issues are highly fact-intensive. See Uptown Improvement Association, Inc. v. Board of Zoning Adjustments of City of New Orleans, 243 So.2d 345, 347 (La.App. 4th Cir.1971) and cases cited therein.
Turning to the neighbors’ petition for declaratory judgment, we look to La. C.C.P. art. 1871, which provides:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where appropriate. The declaration shall have the force and effect of a final judgment or decree.
La. C.C.P. art. 1872 further provides in pertinent part that
A person ... whose rights, status, or other legal relations are affected by a statute, [or] municipal ordinance ... may have determined any question of construction or validity arising under the ... statute, [or] ordinance ... and obtain a declaration of rights, status, or other legal relations thereunder.
The procedural provisions on declaratory judgments are remedial. “Their purpose is to settle and afford relief from uncertainty and insecurity with respect to the rights, status, and other legal relations, and they are to be liberally construed and administered.” La. C.C.P. art. 1881. Most assuredly, the neighbors are entitled 112⅜0 a judicial declaration of the construction, interpretation, and application of La. R.S. 33:4882 A and of CZO Sections 13.2.1 and 13.3.2[13] to the facts concerning the delayed restoration of these properties, which facts are to be tried and determined as in other civil actions. La. C.C.P. art. 1879. Those facts cannot be ascertained on an exception of no cause of action.
We conclude that the neighbors have stated a cause of action for declaratory judgment and that the Atrium and SJDP, as well as the city, are properly joined as parties because they have an “interest which would be affected by the declaration.” La. C.C.P. art. 1880. As long as *194 the neighbors have stated a cause of action,[14] their petition may not be dismissed. Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Comm’rs of Orleans Levee Dist., 95-0238, p. 8 (La.App. 4 Cir. 9/4/96), 680 So.2d 159, 164. Accordingly, the trial court erred as a matter of law when it granted the exceptions of no cause of action filed by the Atrium and SJDP.

The Exception of No Right of Action

Another objection which may be raised through the peremptory exception is “[n]o right of action, or no interest in the plaintiff to institute the suit.” La. C.C.P. art. 927(A)(6). “On the trial of the peremptory exception [of no right of action] pleaded at or prior to the trial of the ease, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds therefore do not appear from the petition.” La. C.C.P. art. 931.
As we set out in Touzet v. V.S.M. Seafood Services, Inc.:
| isThe peremptory exception of no right of action questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged against the exceptor.... When considering the exception, the court must ask whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted.... The exception does not raise the question of the plaintiffs ability to prevail on the merits nor the question of whether the defendant may have a valid defense....
96-0225, pp. 2-3 (La.App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012-13 (ellipses indicate omitted citations). See also St. Bernard Optical Corp. v. Schoenberger, 05-0548, p. 6 (La.App. 4 Cir. 1/25/06), 925 So.2d 604, 608.
We have concluded that a resident of the same zoning district in which property which is non-conforming with the district’s zoning designation has a cause of action for a declaratory judgment to determine the validity or legality of the non-conforming use. In our consideration of the exception of no cause of action, we accept as true that the neighbors are residents of the same zoning district. SJDP was entitled to introduce evidence at the hearing on the exception of no right of action to controvert the truth of the neighbors’ allegation of residency; they did not introduce any controverting evidence. In the absence of such evidence, there is no basis to conclude that the neighbors, or either of them, have no right of action. Therefore, the trial court erred in granting the exception of no right of action filed by SJDP.

Related Proceedings

We understand that on remand the trial court will have before it in this proceeding the neighbors’ cause of action against the Atrium and SJDP for declaratory judgment and injunctive relief, and their action against the City of New Orleans for declaratory and injunctive relief as well as the writ of mandamus |14directed to Mr. Centineo, the departmental director who is responsible for issuing permits and zoning enforcement. Also, the trial court in the consolidated case will have the administrative appeal of the neighbors from the deci *195 sion of the BZA. The district court is authorized to grant a writ of certiorari to the BZA. La. R.S. 33:4727 E(2). The district court also may take evidence in addition to any introduced before the BZA. La. R.S. 33:4727 E(4).
This will place the trial court in the position to dispose at one time of all the factual and legal issues and bring this controversy to a timely resolution. See French Quarter Citizens For the Preservation of Residential Quality, Inc. v. New Orleans City Planning Commission, 99-2154, p. 6-8 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 20-21; Town v. Gulf States Utilities, 289 So.2d 338 (La.App. 1st Cir.1973). Decree
We therefore reverse the judgment of the district court which dismissed with prejudice the lawsuit filed by Douglas Jou-bert and Lillian Legardeur against The Atrium in Metairie, Inc., and South Jefferson Davis Parkway, LLC, and remand the matter for further proceedings.
REVERSED AND REMANDED.
ARMSTRONG, C.J., dissents with reasons.
McKAY, J., dissents.

. See Nassau Realty Co. v. City of New Orleans, 221 So.2d 327, 330-31 (La.App. 4th Cir.1969) for the use of the term "neighbors”: a property owner may sustain a loss and be subjected to undue hardship through no fault of his own, but the remedy “does not lie in any action which will merely pass the hardship on to its neighbors whose property would be reduced in value ...." (emphasis added).

. The neighbors also joined as party defendants owners of three other properties in the zoning area. One of them, the Pick Family Trust, entered a consent judgment, preventing it from returning the properly to its previous non-conforming use. The claims against the remaining property owners are not before us on this appeal.

. The matters against the City of New Orleans remain pending in the district court and the legal issues surrounding the propriety of issuing a writ of mandamus pursuant to La. C.C.P. arts. 3861 et seq. are not before us.

.The judgment also provided that plaintiffs' "writ” is denied. The record is unclear whether the writ which was denied was the writ of mandamus, which was not before the trial court, or the writ of certiorari, which the trial judge referenced on the record. The record is otherwise silent as to a writ of certiorari. Either writ would be directed to the city or the Bureau of Zoning Adjustments, neither of which was participating in the hearings on the exceptions and motion to dismiss. In any event, we are effectively vacating the entire judgment rendered by the trial court, including this provision.

. See Rule 9.8(B) of the Uniform District Court Rules requires that fifteen (15) days elapse between the filing and hearing on a motion, stating:
*190 (a) Contradictory Exceptions and Motions. All exceptions and motions, including those incorporated into an answer, must be accompanied by a proposed order requesting the exception or motion be set for hearing. If the exceptor or mover fails to comply with this requirement, the court may strike the exception or motion, or may set the matter for hearing on its own motion. To assist the court in scheduling the hearing, the exception or motion must state: (1) whether the case is set for trial and, if so, the trial date; and (2) whether testimony will be offered at the hearing.
(b) Time between filing and hearing. No hearing on an exception or motion will be scheduled until at least 15 days after filing. A party seeking to have an exception or motion heard less than 15 days after filing must show good cause and must state in the exception or motion the reasons why an expedited hearing is necessary.
Further, Rule 9.9 states:
(a) When a party files an exception or motion, that party must concurrently furnish the trial judge and serve on all other parties a supporting memorandum that cites both the relevant facts and applicable law. The memorandum must be served on all other parties so that it is received by the other parties at least 15 calendar days before the hearing, unless the court sets a shorter time.
(b) A party who opposes an exception or motion must concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing.
The opposition memorandum must be served on all other parties so that it is received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time.

. On October 7, 2008, the Atrium filed a verified cross-claim against the city alleging that in January 2006, it applied for and received a restoration building permit to repair damages to its premises. In late 2006, an employee of the city informed the Atrium that it could continue restoration work under the authority of the permit and did not need to apply for an extension. On February 29, 2008, the Court ruled that the Atrium had until August 29, 2008, to complete repairs. On August 15, 2008, pursuant to CZO Section 13.3.2, the Atrium tried to file for an extension of its restoration building permit with the city through its BZA; however, the city refused the application, stating that the permit had expired. The cross-claim slates that the city is estopped from asserting that the permit of January 2006 was not in effect because the Atrium relied on representations of the city’s authorized agent. The cross-claim prays for a writ of mandamus directing the city to extend the Atrium’s restoration permit or show cause to the contrary.

. The parties informed us at oral argument that the neighbors had appealed the decision or action of the BZA to the district court and that the appeal had been transferred and consolidated with this case and related cases in the trial court.

. Neither neighbor, however, pleads an ownership interest in the property in which they reside.

. "Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities.”

. For illustration, see Pailet v. City of New Orleans Dept. of Safety and Permits, 433 So.2d 1091 (La.App. 4th Cir.1983) (involving City Park Mid-City Improvement Association, Inc.); Lakeshore Property Owners Association, infra; Coliseum Square Association, Inc. v. Board of Zoning Adjustments of City of New Orleans, 374 So.2d 177 (La.App. 4th Cir.1979); French Quarter Citizens For the Preservation of Residential Quality, Inc. v. New Orleans City Planning Commission, infra; "Dudenhefer's neighbors” at Lake Catherine in Dudenheffer v. City of New Orleans, Department of Safety and Permits, supra at 177-78; River Oaks-Hyman Place Homeowners Civic Association v. City of New Orleans, 281 So.2d 293 (La.App. 4th Cir.1973), and Uptown Improvement Association v. Board of Zoning Adjustments of the City of New Orleans, infra.

. They find support for their position in La. Atty. Gen. Op. No. 07-0321, 2008 WL 962042.

. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.”

. La. C.C.P. art. 1880 provides in pertinent part: "In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard.”

. It is unnecessary for us to consider at this juncture whether the neighbors have stated a cause of action for injunctive relief. The neighbors do not appear to have taken any steps to obtain any ancillary injunctive relief, such as a temporary restraining order or a preliminary injunction. La. C.C.P. arts. 3602 and 3603. A permanent injunction or a mandatory injunction could be granted as supplemental relief dependent upon what the judgment declares. La. C.C.P. art. 1878.