PAUL A. BONIN, Judge.
|2Mace Scott, an emergency room physician, sued Kamran Zaherí, another emergency room physician, because Dr. Scott came to believe that Dr. Zaherí published four anonymous defamatory letters about him over a three year period. The first three of the four letters were published more than one year before Dr. Scott filed his suit on February 14, 2018. Dr. Zaherí filed an exception of prescription regarding the first three letters and exceptions of no cause and of no right of action regarding the fourth letter.
Rejecting Dr. Scott’s contention that the four letters constituted a continuous tort, the trial judge concluded that the publication of each of the four letters gave rise to discrete causes of action and thus the causes of action arising out of the three letters published more than one year before the filing of the lawsuit were prescribed by the expiration of more than one year due to the inaction of Dr. Scott. With respect to the fourth publication, while finding that Dr. Scott had stated a cause of action for defamation and intentional infliction of mental distress, the trial judge nonetheless sustained the exception of no cause of action in part to dismiss Dr. Scott’s claims for intentional and/or negligent interference with a contract, ^negligent infliction of emotional distress, and fraud. Dr. Scott now seeks our review of the trial judge’s rulings.
We agree with the trial judge that the publication of the four letters does not constitute a continuing tort and that the causes of action arising from the publications of the first three anonymous letters are prescribed on the face of the petition.[1] And thus the trial judge correctly sustained the exception of prescription. But because Dr. Scott argued to the trial judge that the softening doctrine of contra non valentem applies, we conclude that the trial judge was required to afford Dr. Scott time within which to amend his petition in order to plead facts to support the application of contra non valentem and thereby prove that the one-year prescriptive period was tolled until the discovery by Dr. Scott of the identity of the anonymous letter-writer. We therefore amend the judgment insofar as it sustained the exception of prescription in order to allow time for Dr. Scott to amend his petition. And we affirm that part of the judgment as amended and remand with instructions.
We disagree, however, with the trial judge’s ruling granting a partial exception of no cause of action because our law has long disfavored the granting of partial exceptions of no cause of action.[2] See Everything on Wheels Subaru, Inc. v. Subaru *783 South, 616 So.2d 1234,1239 (La.1993). We thus reverse that part of the trial court’s judgment.
|4We turn now to explain our decision in detail.
I
We begin with a brief description of this matter’s factual and procedural history.
Between September 2010 and May 2011, Dr. Scott, a physician working at Touro Infirmary’s emergency room, was the subject of three defamatory letters addressed to Touro by an anonymous writer. The letters accused Dr. Scott of various acts of medical malpractice, professional malfeasance, personal negligence, sexual misconduct, and criminal behavior.[3] Although Touro’s internal investigation into the letters’ allegations exonerated Dr. Scott, he resigned from Touro in January 2012. In February 2012, Southern Emergency Medicine, LLC, whose sole member is Dr. Scott, was awarded the emergency room operation contract from St. Bernard Parish Hospital. Dr. Scott began working at St. Bernard’s emergency room shortly thereafter. In October 2012, the hospital, in addition to several other individuals in St. Bernard Parish, received a fourth anonymous letter which contained additional defamatory comments and attached the prior three defamatory letters which had been addressed to Touro. Dr. Scott alleges that he acquired sufficient information after the fourth letter’s receipt to | sindícate that Dr. Zaherí, a former coworker at Touro’s emergency room, was the letters’ anonymous author. Dr. Scott and Southern Emergency Medicine subsequently filed suit on February 14, 2013, against Dr. Zaherí requesting damages for defamation, fraud, intentional and/or negligent infliction of emotional distress, and intentional and/or negligent interference with a contract.[4]
Dr. Zaherí responded to the suit by filing an answer, as well as exceptions of prescription, no cause of action, and no right of action on June 3, 2013. Dr. Za-heri’s exception of prescription argued that Dr. Scott’s claims for defamation with respect to the anonymous letters addressed to Touro were prescribed because defamation is a tort subject to a one-year prescriptive period and the letters’ publications to Touro in 2010 and 2011 occurred more than one year before the February 14, 2013 filing of Dr. Scott’s petition for damages. Dr. Zaheri’s exception of no right of action asked the trial court to dismiss Dr. Scott’s claims for intentional and/or negligent interference with a contract with Tou-ro because neither Southern Emergency nor Dr. Scott had a contract with Touro. Lastly, Dr. Zaheri’s exception of no cause of action asserted that the Dr. Scott’s claims for fraud, intentional and/or negligent interference with a contract, and intentional and/or negligent infliction of emotion distress should be dismissed because *784 the petition fails to properly plead these causes of action.
Dr. Scott filed an opposition memorandum and the parties argued the merits of Dr. Zaheri’s exceptions before the trial judge on August 23, 2013. The trial _yudge took the matter under advisement, and subsequently issued a written judgment, and reasons for judgment, on March 7, 2014.
Specifically, the trial judge sustained Dr. Zaheri’s exception of prescription and dismissed with prejudice “all delictual claims arising from the letters allegedly sent by Dr. Zaherí to individuals and groups affiliated with Touro Infirmary in or around September 2010, February 2011, and May 2011.”[5] Further, the trial judge sustained Dr. Zaheri’s exception of no right of action with respect to Dr. Scott’s claims for fraud, negligent infliction of emotional distress, and intentional and/or negligent interference with the Touro contract. Conversely, the trial judge overruled Dr. Zaheri’s exception of no cause of action with respect to Dr. Scott’s claim for intentional infliction of emotional distress, and overruled as moot Dr. Zaheri’s exception of no-right of action.
The trial judge certified the judgment as final and appealable on May 9, 2014, in response to a motion filed by Dr. Scott who subsequently sought timely appellate review. See La. C.C.P. art. 1915 B. On appeal, Dr. Scott challenges the trial judge’s granting of Dr. Zaheri’s exceptions of prescription and partial no cause of action. Dr. Scott, specifically, argues that the exception of prescription was improperly sustained because the continuing tort doctrine applies to the facts of this case and serves to prevent the running of prescription. Dr. Scott also argues that the doctrine of contra non valentem applies to the facts of his case and that this |7Court should remand this matter to the trial court so that he can amend his petition to plead this doctrine. Lastly, Dr. Scott argues that the judgment sustaining Dr. Za-heri’s partial exception of no cause of action should be reversed on the grounds that Louisiana law has long disfavored the granting of partial exceptions of no cause of action. See Everything on Wheels Subaru, supra.
II
We summarize now the well-established decisional rules applicable to exceptions of prescription and of no cause of action.
A
“Prescription must be pleaded. Courts may not supply a plea of prescription.” La. Civil Code art. 3452. See also La. C.C.P. art. 927 B (“The court may not supply the objection of prescription, which shall be specially pleaded.”). Prescription is an objection raised by peremptory exception. See La. C.C.P. art. 927 A(1). Like other peremptory exceptions, a defendant may raise the exception of prescription in the trial court at any time prior to the matter’s submission after trial. La. C.C.P. arts. 927 and 928(B). La. C.C.P. art. 929 provides that when a peremptory exception is pled prior to trial, the exception is tried and disposed of in advance of or on the trial of the case.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremp *785 tory exception. See Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992). If prescription is evident on the face of the pleadings, however, the burden j «shifts to the plaintiff to show that the action has not prescribed. See Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La.1993).
The trial court is not bound to accept as true the allegations of a plaintiffs petition in its trial of the peremptory exception. See Bowers v. Orleans Parish School Bd., 95-2530 (La.App. 4 Cir. 5/29/96); 694 So.2d 967, 972. Evidence may be introduced at the trial of all peremptory exceptions, except the objection of no cause of action. See La. C.C.P. art. 931.
A judgment granting a peremptory exception is generally reviewed de novo, because the exception raises a legal question. See Metairie III v. Poche’ Const., Inc., 10-0353, p. 3 (La.App. 4 Cir. 9/29/10); 49 So.3d 446, 449. When evidence is introduced and evaluated at the trial of a peremptory exception, we must review the entire record to determine whether the trial court manifestly erred with its factual conclusions. See Davis v. Hibernia Nat. Bank, 98-1164 (La.App. 4 Cir. 2/24/99); 732 So.2d 61, 63. The standard of review of a trial court’s finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. See In re Medical Review Proceedings of Ivon, 01-1296, p. 5 (La.App. 4 Cir. 3/13/02); 813 So.2d 532, 536. The standard controlling our review of a peremptory exception of prescription also requires that we strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. See Proctor’s Landing Property Owners Ass’n, Inc. v. Leopold, 11-0668, p. 10 (La.App. 4 Cir. 1/30/12); 83 So.3d 1199, 1206; Bosarge v. DePaul/Tulane Behavioral Health Center, 09-1345, p. 2 (La.App.9 4 Cir. 5/19/10); 39 So.3d 790, 792. Nevertheless, the courts of this state have held “that where the plaintiff has raised allegations in an argument which might be sufficient to overcome a peremptory exception of prescription, he should be allowed time to amend his petition to assert such allegations, even though the claim asserted in the original petition is prescribed on its face.” Whitnell v. Menville, 540 So.2d 304, 309 (La.1989), discussing La. C.C.P. art. 934.
B
Whether a petition states a cause of action is raised by the peremptory exception of no cause of action. See La. C.C.P. art. 927 A(5). An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. See Needom v. Robein, 08-0318, p. 5 (La.App. 4 Cir. 2/18/09); 7 So.3d 30, 34. “No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.” La. C.C.P. art. 931. The exception is triable on the face of the petition and, to determine the issues raised by the exception, the well-pleaded facts of the petition must be accepted as true. See Joubert v. City of New Orleans, Office of Safety & Permits, 09-0601, p. 7 (La.App. 4 Cir. 1/13/10); 30 So.3d 186, 191. “When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.” See La. C.C.P. art. 934. However, if “the grounds of the objection raised through |inthe exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, *786 claim, demand, issue, or theory shall be dismissed.” Id.
Ill
We first address Dr. Scott’s two challenges to that portion of the judgment which granted Dr. Zaheri’s exception of prescription and dismissed all claims stemming from the three 2010 and 2011 publications to Touro officials. At the outset, we note that the trial judge properly granted Dr. Zaheri’s exception of prescription with respect to these publications. No evidence was introduced into the record either in support, or contravention, of this exception. The exception, therefore, was tried solely on the face of Dr. Scott’s petition, which advanced six causes of action: 1) defamation; 2) fraud; 3) intentional infliction of emotional distress; 4) negligent infliction of emotional distress; 5) intentional interference with contractual relations; and 6) negligent interference with contractual relations. These causes of action are, unquestionably, tort-based or delictual, and thus subject to one-year prescriptive periods.[6] Simply put, the trial judge concluded correctly that any tort-based, or delictual, causes of action which flowed from the three publications that occurred between September 2010 and May 2011 would have prescribed by the time Dr. Scott filed his petition on February 14, 2013.
|T1But Dr. Scott argues that the harsh effects of prescription should be softened in his case by the application of either the continuing tort doctrine — which would prevent the running of prescription until the publication of the last anonymous letter in October 2012 — or contra non valentón— which would serve to interrupt prescription until Dr. Scott discovered the identity of the letter-writer — to the facts of this case. We address each argument in turn.
A
First, Dr. Scott argues that the continuing tort doctrine applies to this case, thus preventing the running of prescription on his claims until the last anonymous letter was sent in October 2012. We disagree.
When damaging conduct is of a continuous nature, prescription does not begin to run until the date of the last harmful act. See South Central Bell v. Texaco, 418 So.2d 531 (La.1982). This continuing-tort doctrine, however, requires not only that the tortious conduct be of a continuing nature, but also that it give rise to successive damages from day to day. South Central Bell, 418 So.2d at 533 (“Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing damage.”). Typically, courts have found torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action; but instead, the cumulative effect of regularly-occurring or continuous actions results in successive damages from day to day. See, e.g., Bustamento v. Tucker, 607 So.2d 532 (La.1992); South Central Bell, supra.
*787 | 12To the extent the plaintiff claims that the damage he suffered as a result of the successive publications is continuing, we find the law is clear that the allegations of the plaintiffs petition cannot constitute a continuing tort. In Crump v. Sabine River Authority, 98-2326, p. 7 (La.6/29/99); 737 So.2d 720, 726, the Supreme Court noted that “the theory of continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages.” The Supreme Court has held that “[a] continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant.” Crump, 98-2326, p. 10, 737 So.2d at 728.
The inquiry as to whether there is continuous tortious conduct “is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts.” Hogg v. Chevron USA Inc., 09-2632, p. 16 (La.7/6/10), 45 So.3d 991, 1003. In Hogg, the Supreme Court indicated that “courts look[ ] to the alleged injury-producing conduct of the tortfeasors to determine whether that conduct was perpetuated through overt, persistent, and ongoing acts.” 09-2632, p. 21, 45 So.3d at 1005. Summarizing the jurisprudence, the Supreme Court concluded that in cases where “the wrongful conduct was completed, but the plaintiff continued to experience injury in the absence of any further activity by the tort-feasor, no continuing tort was found.” Id.
11sWe find that the operating cause of the injuries claimed in the petition here was the publication of the anonymous letters in September 2010, February 2011, May 2011, and October 2012. Although it pleads the applicability of the continuing tort doctrine, the petition does not claim that there have been continual or ongoing unlawful acts; instead, the petition asserts several distinct tortious publications, which ceased as of the final publication in October 2012.
But Dr. Scott cites, in support of his argument, to several cases where the continuing tort doctrine has been applied to workplace harassment cases for the proposition that defamatory, harassing conduct can constitute a continuing tort. See, e.g., Bustamento, supra; King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99); 743 So.2d 181. These opinions, however, are inappo-site to the present matter. In Dr. Scott’s case, the alleged publications are clearly separate and distinct, with particular damages flowing from each individual publication. See Neyrey, supra. Even though the four publications share similarities, they are not continuous or systematic acts of abuse. We conclude that the trial judge did not error when he concluded that the facts as pled in Dr. Scott’s petition do not rise to the level of a continuing tort.[7]
B
Next, Dr. Scott argues that the portion of the judgment granting Dr. Za-heri’s exception of prescription should be reversed in light of the softening doctrine of contra non valentem. Alternatively, Dr. Scott argues that the portion of the | j Judgment granting Dr. Zaheri’s exception of prescription should be vacated, and this matter remanded so that he can attempt to amend his petition and plead contra non valentem. Here, Dr. Scott has failed to formally plead the doctrine before *788 the trial court. Generally, issues not raised in the trial court will not be given consideration for the first time on appeal. See Rule 1-3, Uniform Rules-Courts of Appeal. Therefore, we will not consider as error the trial judge’s refusal to deny Dr. Zaheri’s exception of prescription on the grounds of contra non valentem.
Our conclusion, nevertheless, does not require dismissal of Dr. Scott’s claims for damages arising out of the three 2010 and 2011 publications to Touro officials. Code of Civil Procedure art. 934, as noted, provides that a judgment sustaining a peremptory exception shall provide the losing party with an opportunity to amend their petition if the grounds of the objection pleaded by the exception could be removed by amendment of the petition. As the Supreme Court noted in Whitnell, Article 934 “has been liberally applied in cases involving prescription.” 540 So.2d at 309. In numerous cases, Louisiana courts of appeal have held that “where the plaintiff has raised allegations in argument which might be sufficient to overcome a peremptory exception of prescription, he should be allowed time to amend his petition to assert such allegations, even though the claim asserted in the original petition is prescribed on its face.” Id.[8] As the | ^Supreme Court observed, this “rule recognizes this state’s liberal approach toward allowing amended pleadings, and promotes the interests of justice.” Id.
“While it is not necessary to allow plaintiff time to amend if he cannot even point out possible grounds sufficient to overcome the exception, a court may allow time to amend if the new allegations raise the possibility that the claim is not prescribed, even if the ultimate outcome of the prescription issue, once the petition is amended, is uncertain.” Whitnell, 540 So.2d at 309. Therefore, unless a court can determine in advance of an amendment that any new allegation could have no effect on the prescription issue, an opportunity to amend should be allowed. Id.
Here, Dr. Scott seeks to amend his petition to plead the doctrine of contra non valentem. Louisiana jurisprudence has long recognized this doctrine as a means of suspending the running of prescription when the circumstances of a case fall within one of four categories.[9] See Albe v. City of New Orleans, 14-0186, p. 3 (La.App. 4 Cir. 9/17/14); 150 So.3d 361, 364-64; Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 222 (1996). Dr. Scott asserts only one of these four categories: where the obligor himself has done some act effectually to prevent the obligee from availing himself of his cause of action.[10] In light of this *789 category of contra non valentem, and Dr. Scott’s allegation that Dr. |1fiZaheri authored the defamatory letters anonymous^ ly, we cannot say that any new allegation along these lines could have no effect on the prescription issue. We, accordingly, affirm the trial court’s sustaining of Dr. Zaheri’s exception of prescription • but amend the judgment to allow Dr. Scott on remand the opportunity to amend his petition to plead facts which establish the applicability of the doctrine of contra non valentem.
IV
We next address Dr. Scott’s challenge to that portion of the judgment which sustained in part Dr. Zaheri’s exception of no cause of action with respect to Dr. Scott’s claims for fraud, tortious interference with his contractual relationship ■with St. Bernard Parish Hospital, and negligent infliction of emotional distress.[11]
Dr. Scott, among other things, asserts that the judgment on this point is erroneous because it constitutes a prohibited partial no cause of action. On this point we need not linger long. Dr. Zaheri’s exception of no cause of action left untouched Dr. Scott’s defamation cause of action. Dr. Zaheri’s exception, therefore, is a prohibited partial no cause of action exception because it essentially concedes that Dr. Scott’s petition states a cause of action for defamation. The Supreme Court, in Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1286 (La.1993), stated clearly that “[if] the petition states a cause of action as to any ground or portion of the demand, the exception of no cause of |17action generally should be overruled.” “The purpose of this general rule is to prevent a multiplicity of appeals which forces an appellate court to consider the merits of the action in a piecemeal fashion.” Id. Because it sought the dismissal of some, but not all, of Dr. Scott’s causes of action, Dr. Zaheri’s exception of no cause of action should have been denied by the trial judge.
REMAND INSTRUCTIONS
After the finality of this judgment, the trial court shall issue an order which provides that, within the delay to be set by the trial court, the plaintiffs shall be afforded an opportunity to amend their petition to remove the objection of prescription by pleading facts which establish the applicability of the doctrine of contra non valentem to the three facially-prescribed causes of action. See La. C.C.P. art. 934.
DECREE
The judgment of the trial court in that part which sustained Dr. Kamran Zaheri’s exception of prescription is affirmed, except that the judgment in that part is amended to afford Dr. Mace Scott the opportunity to amend his petition. The judgment of the trial court in that part which sustained Dr. Zaheri’s exception of no cause of action is reversed. The matter is remanded with instructions.
JUDGMENT AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND REMANDED.

. The parties did not introduce any evidence at the hearing on the exception of prescription. See La. C.C.P. art. 931 ("On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.”); see also Denoux v. Vessel Mgmt. Servs., Inc., 07-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88.

. We note that the trial court’s judgment mislabels Dr. Zaheri’s exception of no cause of action as an exception of no right of action. No party makes an issue of this undoubtedly inadvertent mistake, and neither will we.

. While we draw no legal conclusions with respect to the letters, they are arguably defamatory. See Trentecosta v. Beck, 96-2388, p. 10 (La.10/21/97); 703 So.2d 552, 559 (La.1997) ("A communication is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person.”). See also Brungardt v. Summitt, 08-0577, p. 8 (La.App. 4 Cir. 4/8/09); 7 So.3d 879, 885, citing Costello v. Hardy, 03-1146, pp. 13-14 (La.1/21/04); 864 So.2d 129, 140. ("[w]ords which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se.”).

. Although there are two distinct plaintiffs in this matter, we refer to them collectively as "Dr. Scott” for brevity's sake.

. We interpret the trial judge’s ruling on this point to mean that the re-publication of the September 2010, February 2011, and May 2011 anonymous letters to St. Bernard Parish Hospital in October 2012 is actionable. See Neyrey v. Lebrun, 309 So.2d 722, 725 (La.App. 4th Cir.1975) (“Each publication of a defamatory letter or statement results in a new and separate tort.”).

. See La. Civil Code art. 3492. See also Zeigler v. Housing Authority of New Orleans, 12-1168, p. 19 (La.App. 4 Cir. 4/24/13); 118 So.3d 442, 455 (defamation); Cacioppo v. Alton Ochsner Foundation Hospital, 01-808, p. 5 (La.App. 5 Cir. 12/26/01); 806 So.2d 803, 805 (fraud); King v. Phelps Dunbar, 98-1805, p. 7 (La.6/4/99); 743 So.2d 181, 187 (intentional infliction of emotional distress); Duncan v. Bartholomew, 11-0855, p. 11 (La.App. 4 Cir. 3/14/12); 88 So.3d 698, 707-708 (negligent infliction of emotional distress); Scott v. City of New Orleans, 04-0414, p. 4 (La.App. 4 Cir. 10/27/04); 888 So.2d 318, 320 (tortious interference with a contract).

. We arrive at this conclusion regardless of the standard of review employed. See Davis, supra; Hunter v. Tensas Nursing Home, 32,217, p. 3 (La.App. 2 Cir. 10/27/99); 743 So.2d 839, 841.

. See, e.g., Quinn v. Louisiana Citizens Property Insurance Corp., 12-0152 (La.11/2/12); 118 So.3d 1011; Whitnell, supra; Vegelos v. Abramson, 12-1235 (La.App. 4 Cir. 10/2/13); 126 So.3d 639; Zoulek v. PIP America, 08-0550 (La.App. 4 Cir. 12/10/08); 2 So.3d 511; Craig v. Housing Authority of New Orleans, 482 So.2d 148 (La.App. 4th Cir.1986); Royal v. Schwartz, 433 So.2d 390 (La.App. 4th Cir.1983).

. Contra non valentem non currit praescriptio means that prescription does not run against a person who could not bring his suit. See Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992); see also, Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (La.1970).

.The other three categories of contra non valentem are: 1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff’s action; 2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and 3) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. See Wells v. Zadeck, 11-1232, pp. 8-9 (La.3/30/12); 89 So.3d 1145, 1150.

. We note that the March 10, 2014 judgment afforded Dr. Scott fifteen days to attempt to amend his petition so as to remove the grounds of Dr. Zaheri’s exception. See. La. C.C.P. art. 934. However, it does not appear from the record before us that Dr. Scott ever attempted to so amend his pleadings.